IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KIPPY D. SMITH, et al.,

        Plaintiffs,

v.                                CIVIL ACTION NO.   2:22-cv-00442

COLUMBIA GAS TRANSMISSION, LLC,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Columbia Gas Transmission, LLC's ("Defendant")

Motion for Summary Judgment.   (ECF No. 98.)   For the reasons discussed below, this motion is

**DENIED**.

### I.    BACKGROUND

This case involves a gas line ("the Pipeline") running through Plaintiffs Kippy and Mary

Smith's (collectively, "Plaintiffs") property.   (ECF No. 100 at 3.)   The Pipeline was installed in

the early 1940's by Defendant's predecessor in interest, United Fuel Gas Co., after obtaining a

right-of-way agreement from the property's owners.   (ECF No. 99 at 1.)   While the agreement

did not specify the width of the right-of-way, Defendant claims that it is understood that fifty feet

(twenty-five feet on either side of the pipeline) is the necessary width of an easement for the

purpose of the operation, maintenance, and repair of natural gas pipelines.   (*Id*.)   The Pipeline

runs parallel to the back of the home and porch, approximately twenty-five feet behind the house.

1

(ECF No. 100 at 3.)   Plaintiffs purchased the property in 1978 and began construction of their home that same year.   (ECF No. 99 at 2.)   During the construction process, Plaintiffs allegedly placed a significant amount of fill on top of the Pipeline to flatten their backyard.   (*Id*.)   Plaintiffs also built portions of their home within the fifty-foot right-of-way.   (*Id*.)

According to both parties, the Pipeline has experienced numerous leaks over the years, which required repairs, beginning in the late 1980's.   (*Id*.)   Plaintiffs then noticed cracks and potential settling of their foundation by the late 1990's.   (*Id*.)   To remedy these issues, Defendant performed excavations in which a trench would be opened by excavation equipment in the area of the leak.   (ECF No. 100 at 3.)   Defendant's heavy equipment operators stated that they would quickly fill the trench back in the same day with the same dirt they had excavated out of the hole. (*Id*. at 4.)   In 2016, Defendant offered to move the Pipeline away from Plaintiffs' home and to the back of their property, but Plaintiffs refused because they believed that Defendant was not entitled to a fifty-foot right-of-way.   (ECF No. 99 at 3.)

Plaintiffs allege that the leaks and excavation activities caused their property to settle, shift, and slide in the area directly behind their home near the Pipeline.   (ECF No. 100 at 4.)   In response to these issues, in 2021, Plaintiffs contacted Timothy Cart, a geotechnical engineer, to inspect the property and determine what was causing the problems.   (*Id*.)   Mr. Cart first inspected the property on November 4, 2021, and noted the movement/slide of the property behind the house and the cracking and structural issues with the home.   (*Id*. at 5.)   Mr. Cart also noted that the trenches dug by Defendant had not been shored.   (*Id*.)   Specifically, Mr. Cart opined that the clay soils at the site require placement of material in six-to-eight-inch lifts with each layer being compacted.   (*Id*.)   However, Defendant's heavy equipment operator testified that he would only

compact it every two feet or so, which Mr. Cart claimed was insufficient. (*Id*.) Mr. Cart also took issue with the compaction techniques used, including utilizing only a small hoe to tamp the backfill material in place. (*Id*.) Mr. Cart stated that based on the description of the compaction techniques used, the trench back fill is unconsolidated resulting in settlement of the trench surface "and … the necessity of the gas company to return and grade the surface smooth." (*Id*.)

Mr. Cart then conducted a second inspection of the property on March 4, 2022. (*Id*.) In his report, Mr. Cart stated: "it is my conclusion that the most probable cause of the ongoing movement at the home is due to frequent trenching at the gas line location." (*Id*. at 6.) "With poorly compacted backfill placed, additional lateral movement would be likely… Due to the settlement of the surface of the trench, depressions will trap surface water runoff adding to softening of the soils and increasing the likelihood of movement." (*Id*.) Based on his inspection, Mr. Cart concluded that the Pipeline should be replaced. (*Id*.)

Consequently, Plaintiffs filed this lawsuit on September 6, 2022, asserting a claim of negligence. (*See* ECF No. 1.) Plaintiffs allege that "the improper shoring, compaction and restoration, soil settlement and runoff caused, and continues to cause, structural damage to the rear of plaintiffs' residence and plaintiffs' backyard." (ECF No. 100 at 6.) Plaintiffs further contend that "[d]espite repeated demands, defendant Columbia has failed or refused to properly repair the damage." (*Id*.)

Following the filing of this suit, Plaintiffs claim that additional movement has occurred in the last three years. (*Id*.) Mr. Cart again visited the property on November 5, 2024, and documented significant movement in the home's walls, floors, and framing. (*Id*.) As a result of this additional movement, Plaintiffs' experts, Mr. Cart and Jennifer Casey, inspected the subject

3

property together on February 7, 2025, and issued supplemental reports. (*Id*.) In his supplemental report, Mr. Cart focused on the accelerated movement caused by the improper excavation techniques. (*Id*.)

Likewise, Ms. Casey, a registered professional engineer, focused her report on the cost to restore the home given the alleged inappropriate construction techniques by Defendant which Plaintiffs claim have led to accelerated foundation movement. (*Id*.) Ms. Casey, like Mr. Cart, agreed that the repeated excavations by Defendant to repair the leaks in the Pipeline have resulted in accelerated movement and significantly amplified the damage to Plaintiffs' property since her first inspection. (*Id*.) The opinions of these experts, specifically Mr. Cart, are what Defendant takes issue with.

On October 27, 2025, Defendant filed its Motion for Summary Judgment. (ECF No. 98.) Plaintiffs filed their Response, (ECF No. 100), and Defendant replied, (ECF No. 101). As such, the motion is fully briefed and ripe for adjudication

## II.    *LEGAL STANDARD*

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating such factual issues, the Court must

4

view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).   The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).   Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 4 U.S. 317, 322 (1986).   If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id*. at 323.

### III.    DISCUSSION

Defendant argues that summary judgment is warranted because Plaintiffs failed to develop each required element necessary to prove a claim of negligence.   (ECF No. 99 at 8.)   Specifically, Defendant contends that Plaintiffs were required to provide an expert to establish the standard of care on the operation and maintenance of natural gas pipelines.   (*Id*.)   The Court disagrees.

"Under West Virginia law, the elements of a negligence action re: (1) the existence of a duty, (2) the breach of that duty, (3) loss or damage to another caused by the breach, and (4) actual loss or damage to another." *Letart v. Union Carbide Corp*., 461 F. Supp. 3d 391, 395 (S.D. W. Va. 2020).   When a Plaintiff fails to develop evidence to satisfy even one of these elements, the entry of summary judgment is warranted.   *Yoho v. Sw. Energy Co., No*. 5:23-CV-101, 2025 WL 747827 at *3 (N.D. W. Va. Jan. 13, 2025).

Negligence can "be established by lay witnesses in cases where negligence or want of professional skill is so obvious as to dispense with the need for expert testimony[.]" *Roberts v. Gale*, 149 W. Va. 166, 172–73, 139 S.E.2d 272, 276 (1964). "When the issues are beyond the common knowledge and experience of the average juror, expert testimony shall be required." *J.C. v. Pfizer, Inc.*, 240 W. Va. 571, 583 (2018) (quoting *Dion v. Graduate Hosp. of Univ. of Penn.*, 360 Pa. Super. 416, 520 (Pa. Super. Ct. 1987)).

Here, Defendant argues that Plaintiffs were required to disclose an expert witness to address the standard of care for maintenance and repairs in the natural gas pipeline industry. (ECF No. 99 at 6) (citing to *Yoho*, No. 5:23-CV-101, 2025 WL 747827 at *3). Defendant's argument rests on the premise that this case turns on whether it complied with highly technical standards of care governing pipeline operations, such as those regulated by the Federal Energy Regulatory Commission ("FERC"). (*See id*.) That characterization, however, is incorrect. This case does not necessitate an evaluation of complex regulatory or industry specific standards. Rather, the central issue is simply whether Defendant's excavation efforts when repairing the leaking Pipeline were reasonable. (*See* ECF No. 100 at 13.)

Accordingly, the threshold inquiry is whether Plaintiffs' expert witnesses were (1) qualified and (2) whether they rendered reliable opinions with respect to causation and the applicable standard of care. *See Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 150 (4th Cir. 2013). To be qualified under Rule 702, an expert witness must have "knowledge, skill, experience, training, or education" in the subject area in which he intends to testify. Fed. R. Evid. 702. An expert's qualification depends on "the nature of the opinion he offers." *See Gladhill v. Gen. Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir.1984).

In assessing a proffered expert's qualifications, courts must "'consider the proposed expert's full range of experience and training,' not just his professional qualifications." *Belk, Inc. v. Meyer Corp.*, U.S., 679 F.3d 146, 162 (4th Cir. 2012) (quoting *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009)).   Relevance and reliability are guided by, among other things: (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community. *United States v. Crisp*, 324 F.3d 261, 266 (4th Cir.2003) (quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 593–94 (1993)).   The Court need not, however, consider all of the factors in lockstep fashion.   *Good v. Am. Water Works Co., Inc.*, 310 F.R.D. 274, 282–83 (S.D. W. Va. 2015).

Here, Plaintiffs provided testimony from two experts: Mr. Cart, a geotechnical engineer, and Ms. Casey, a registered professional engineer and licensed contractor.   (ECF No. 100 at 6.) Plaintiffs rely on these experts to address whether Defendant's excavation activities within the Pipeline right-of-way were reasonable and whether those activities caused the damage to Plaintiffs' property and home.   (*Id*. at 13.)

Mr. Cart is a qualified expert for the issue at hand.   First, Mr. Cart possesses over forty years of experience as a professional geotechnical engineer.   (*Id*. at 14.)   Throughout his career, he has served as a project engineer on numerous geotechnical investigations and has designed a multitude of retaining structures and grading plans to reduce the likelihood of future landslide movement.   (*Id*.)   Mr. Cart has also made design recommendations for fill construction

addressing issues on fill settlement.  (*Id*.)  In addition, he has served as a project engineer on several hundred Abandoned Mine Land ("AML") projects for the West Virginia Department of Environmental Protection ("WVDEP") and the United States Office of Surface Mining Reclamation and Enforcement ("USOSMRE").  (*Id*.)  Mr. Cart has also designed numerous bank stabilization projects for riverbanks throughout the state and performed damage investigations for landslide damage claims for insurance and law firms and has provided expert testimony.  (*Id*. at 14.)

Next, Mr. Cart's opinions are relevant and reliable.  His conclusions are based on firsthand inspections of the property, his education, training, experience, and review of relevant materials including the W. Va. Soil Conservation Service report and photos of the property.  (*Id*.)  Mr. Cart conducted four separate visits to the property and prepared two reports, which were further explained during his deposition testimony.  (*Id*.)  From this work, Mr. Cart opines that Defendant's repeated excavations in the right-of way to repair the leaking Pipeline and the manner in which they were done caused Plaintiffs' damages.  (*Id*.)  Specifically, within his two reports, Mr. Cart details Defendant's excavations and explains his concerns with how the trench was dug and backfilled each time as described to him by Plaintiffs; seen in photographs; and affirmed by Defendants' own heavy equipment operators.  (*Id*.)

This easily satisfies the standards governing the reliability of expert testimony.  "'The test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir.2007) (quoting *Kumho Tire Co*., 526 U.S. at 141-42)).  To be relevant, the question is "'whether expert testimony proffered in the case is

8

sufficiently tied to the facts of the case that it will aid . . . in resolving a factual dispute.'" *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir.1985) (emphasis added).

Here, Mr. Cart, as an experienced geotechnical engineer, is qualified to evaluate excavation practices, and the effects that repeated excavations/backfilling can have on land and adjacent buildings.   (*See* ECF No. 100 at 13–15.)   His opinions were grounded in decades of professional experience, numerous site inspections, and a thorough review of the materials.   (*Id*.)   Such testimony will assist the jury in determining whether Defendant's excavation practices were reasonable and whether those practices caused apparent damage to Plaintiffs' property.   *See Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir.1993) ("The boundary between [admissible and inadmissible expert testimony] is defined by helpfulness.")

Lastly, Ms. Casey's opinions are likewise relevant and reliable.   Ms. Casey is a registered professional engineer and licensed contractor with 30 plus years of experience.   (ECF No. 100 at 7.)   After observing Plaintiffs' home, Ms. Casey focused her report on the cost it would take to restore the home (not the yard/property) given the alleged inappropriate construction techniques by Defendant which Plaintiffs claim have led to accelerated foundation movement.   (*Id*.)   Ms. Casey, like Mr. Cart, maintains that the repeated excavations by Defendant to repair the leaks in the Pipeline have significantly increased the damage to Plaintiffs' property over the years.   (*Id*.)

Thus, at minimum, Mr. Cart and Ms. Casey's testimony creates genuine issues of material facts regarding Plaintiffs' negligence claim.   Their opinions directly address the standard of care applicable to excavation activities and the resulting effects of those activities on Plaintiffs' property and home.

Accordingly, Defendant's motion is **DENIED**.

9

### IV.   CONCLUSION

For the reasons set forth herein, Defendant's Motion for Summary Judgment, (ECF No. 98), is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      March 17, 2026

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE